UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
MICHAEL HOILETT            )
                           )
        Petitioner,        )
                           )
    v.                     )
                           )   CIVIL ACTION NO.
PETER ALLEN,               )   03-12619-RCL
                           )
        Respondent.        )
_____)

**MEMORANDUM ORDER
ON PETITION FOR WRIT OF HABEAS CORPUS**

LINDSAY, District Judge.

### Introduction and Background Facts

Before the court is a petition of Michael Hoilett (the "petitioner" or "Hoilett") for the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Hoilett contends that he is entitled to habeas relief on two grounds: (1) his appellate counsel provided ineffective assistance by failing to appeal the trial court's denial of his motion for the medical records of a key witness; and, (2) the trial judge applied the wrong standard in improperly denying him access to these records. The Attorney General of the Commonwealth of Massachusetts, for the respondent Peter Allen (the "respondent"), has moved to dismiss the petition on the ground that Hoilett's claims are procedurally defaulted. For reasons stated below, the court denies Hoilett's petition and grants the respondent's motion to dismiss.

On October 21, 1994, a jury convicted Hoilett of first-degree murder for the killing of a liquor store owner during the course of a robbery. The conviction was unanimously affirmed by

the Massachusetts Supreme Judicial Court ("SJC") in *Commonwealth v. Hoilett*, 430 Mass. 369, 370-373 (1999). The following recitation of the factual background of this case is summarized from the opinion of the SJC. *Id.*

At the petitioner's trial, his trial counsel did not present any witnesses or evidence but instead employed the strategy of attempting to impeach the testimony of the prosecution's witnesses. One such witness was Anngolia Cartwright, a friend of the petitioner who testified that Hoilett ran into her apartment shortly after the approximate time of the murder and said "f-king spic" and "I hope he dies." She also testified to other incriminating statements that she said were made by the petitioner. She said that Hoilett appeared "nervous" and had a green mask and that his hand was bleeding. Cartwright's roommate, Vimbai Bush, also testified that Hoilett was carrying a green mask and appeared nervous.

On September 22, 1994, the defendant filed a pre-trial motion for discovery of psychiatric, medical, and social service records[1] of Cartwright held by two residential programs and the Commonwealth's Department of Social Services ("DSS"). As a basis for his request, the petitioner cited what he claimed was a recent suicide attempt by Cartwright and her residence at a shelter. Five days later, on September 27, 1994, Judge Quinlan of the Massachusetts Superior Court conducted a hearing pursuant to *Commonwealth v. Bishop*, 416 Mass. 169 (1993), a case governing a criminal defendant's access to otherwise privileged records of a potential witness. The judge subsequently denied the petitioner's request as to the records from the residential programs, and left consideration of the DSS records to the trial judge. Judge Quinlan expressed

---

[1] I will refer to these records collectively as "medical records" throughout the course of this Memorandum Order.

hesitation about expanding *Bishop* beyond sexual assault cases. She finally added that petitioner would have an opportunity to test the Cartwright's memory at trial.

On appeal, a single justice of the SJC affirmed, without a written opinion, Judge Quinlan's decision after the petitioner filed a motion under Mass. Gen. Laws, Ch. 211, § 3.[2] The case then proceeded to trial. At the end of the fourth day of trial, after cross-examining Cartwright, Hoilett's trial counsel renewed his request to review Cartwright's records held by DSS and the halfway house where she lived. The trial judge denied Hoilett's request and stated that he had reviewed them and found "nothing in there that's exculpatory to the defendant."

Hoilett appealed his conviction to the SJC on six grounds: (1) the denial of his motion for a mistrial after the Commonwealth's opening statement; (2) the erroneous admission of certain photographs; (3) the denial of his motion for a mistrial based on the prosecutor's conduct during trial; (4) the alleged improprieties in prosecutor's closing argument; (5) the instructions on the presumption of innocence; and (6) the failure of the trial judge to give a missing witness instruction. *Commonwealth v. Hoilett*, 430 Mass. at 370.[3] Hoilett's appellate counsel, who was different from his trial counsel, did not raise the issue of the trial counsel's access to Cartwright's

---

[2]Mass. Gen. Laws, 211, § 3 states in pertinent part: "[t]he supreme judicial court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided; and it may issue all writs and processes to such courts and to corporations and individuals which may be necessary to the furtherance of justice and to the regular execution of the laws."

[3]The appellate brief purports to present nine separate questions to the SJC. However, because the SJC consolidated some of the analytically similar claims, it only identified six appellate issues.

medical records.[4]  On November 16, 1999, the SJC affirmed Hoilett's murder conviction and overturned his armed robbery conviction as duplicative.  *Id.* at 494.

On October 6, 2000, Hoilett, proceeding *pro se*, filed a motion for a new trial in Suffolk Superior Court.  He argued that he received ineffective assistance of appellate counsel because his appellate counsel failed to raise the trial court's[5] denial of his effort to review Cartwright's medical records.  The motion judge denied the motion and noted that Hoilett "has waived all of these claims by his previous appeal."

Undismayed, Hoilett next sought leave to appeal from a single justice of the SJC.[6]  Hoilett urged the single justice to grant him a new trial on the grounds that his claim for ineffective assistance of appellate counsel claim can never be waived because he never had any opportunity to raise the issue.  On October 9, 2003, the single justice denied Hoilett's motion.[7]  The petitioner, proceeding *pro se*, commenced this habeas action on December 30, 2003.

---

[4] Both Hoilett's trial attorney, John Salsberg, and his appellate counsel, James A. Coutre, were appointed by the Committee Public Counsel Services.  Although both Coutre and Salsberg work for CPCS, there is no conflict of interest here because Hoilett is not claiming ineffective assistance by his trial counsel, only his appellate counsel.

[5] Hoilett contends that both the trial judge and Judge Quinlan improperly denied him access to Cartwright's medical records.  Thus, when I refer to the trial court's denial of Hoilett's attempts to review Cartwright's records, I am referring to Judge Quinlan's decision as well.

[6] Under Mass. Gen. Laws ch. 278, § 33E, defendants in capital cases can file a motion for leave to appeal an order denying a request for a new trial.  This motion is presented to a single justice of the SJC who decides whether it presents a "new and substantial question which ought to be determined by the full court."  Mass. Gen. Laws ch. 278, § 33E.

[7] Justice Ireland , the single justice, wrote "it is ORDERED that the leave to appeal is DENIED."

**Discussion**

I.    <u>Ineffective Assistance of Counsel</u>[8]

Hoilett's first claim for habeas relief is on the ground that his counsel on direct appeal was ineffective in failing to appeal the trial court's denial of access to Cartwright's medical records. He claims that the inclusion of this issue would have made reversal of his conviction more likely. The respondent contends that Hoilett's claim is procedurally barred because the state court's denial of his claim was based on an adequate and independent state ground.

As a general rule, "[a] finding by a state court that a defendant procedurally defaulted a claim bars federal habeas corpus relief on that claim unless that defendant as a petitioner shows either cause for the default and prejudice from the claimed violation of federal law, or that a fundamental miscarriage of justice will result if the claim is not considered." *Gunter v. Maloney*, 291 F.3d 74, 78 (1st Cir. 2002) (*citing Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  In this case, the motion judge denied Hoilett's motion for a new trial because he did not raise his claims of error on "previous appeals" and thereafter a single justice of the SJC denied his motion for leave to appeal. Hoilett insists, however, that because his motion for new trial was his first opportunity to attack the performance of his appellate counsel, he could not have waived this claim. *Cf. Commonwealth v. Lowe*, 405 Mass. 1104, 1105 (1989) (observing that a defendant cannot assert, in a motion for a new trial, claims of error he could have raised, but did not raise, at trial or appeal). Under the teaching of *Lowe* and related cases, Hoilett's claim, at first blush, appears persuasive because he never had an opportunity to appeal his appellate counsel's

---

[8]Hoilett has fully exhausted this claim and it is properly before the court.

performance until his first motion for new trial.[9]

I need not reach the question of whether petitioner's ineffective assistance of appellate counsel claim is procedurally barred because even assuming, *arguendo*, that there is no procedural bar here, the substance of this claim is not meritorious. This case is strikingly similar to the First Circuit's recent decision in *Thompson v. Spencer*, 2004 WL 1949074 (1st Cir. Sept. 2, 2004).[10] In that case, the petitioner also argued that his claim of ineffective assistance of appellate counsel was not procedurally defaulted because "they could not have been raised before the appeals was decided." *Thompson*, 2004 WL 1949074 at * 1. Rather than examine whether petitioner's claim was procedurally barred, the First Circuit instead decided to dismiss the case on the ground that petitioner's claim failed on the merits. I will apply *Thompson's* framework in evaluating Hoilett's ineffective assistance claim.

As an initial point, the *Thompson* court noted that "[b]ecause the state courts did not address the merits of [defendant's] ineffective assistance of appellate counsel claim, habeas review

---

[9]In fact, the respondent has not cited, and I have not found, any case where a Massachusetts court denied, on waiver grounds, an ineffective assistance of appellate counsel claim raised in a defendant's first post-conviction motion.

[10]The First Circuit has designated this case as an unpublished decision, and therefore it may not be cited as precedent. *See* First Circuit Local Rule 32.3(a)(2). However, a litigant or court may cite to an unpublished opinion if it addresses a "material issue" on appeal that has not been addressed in any published opinions. *Id.* If an unpublished opinion satisfies this requirement, then the First Circuit will consider these opinions persuasive, but not precedential. *Id.*

Courts in this district have found that unpublished First Circuit opinions, at a minimum, represent "persuasive authority on the district courts." *Alshrafi v. American Airlines, Inc.*, 321 F.Supp.2d 150, 159-160, n. 9-10 (D.Mass. 2004). Although it has no precedential value, the court relies on *Thompson* because the issues in that case closely mirror those in this case. The case also provides some insight into how the First Circuit might approach the issues, and no other First Circuit opinion has addressed those issues.

of those claims is *de novo*." *See Thompson*, 2004 WL 1949074 at * 1 (citing *Wiggins v. Smith*, 539 U.S. 510 (2003) and *Ellsworth v. Warden*, 333 F.3d 1, 3 (1st Cir. 2003)).

      A defendant has a Sixth Amendment right to the effective assistance of counsel on his direct appeal as of right. *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985) ("A first appeal as of right therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney"). When raising a claim of ineffective assistance of appellate counsel, a habeas petitioner must first show that his counsel's decision not to raise certain issues on appeal was objectively unreasonable. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). He then must show a reasonable probability that, but for his counsel's unreasonable failure to raise these issues, he would have prevailed in his appeal. *Id.* at 286; *see also Strickland v. Washington*, 466 U.S. 668, 686 (1984) (observing that "[t]he benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result"). A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Accordingly, it is insufficient for Hoilett to show that the errors had "some conceivable effect on the outcome." *Id.* at 693. Because Hoilett was represented by appellate counsel, the court presumes that the appellate proceedings were reliable and place the burden on him to rebut this presumption. *Smith v. Robbins*, 528 U.S. at 287.

      Although many courts confronting a claim of ineffectiveness of counsel evaluate the performance prong before the prejudice prong, the Supreme Court has explained that a court does not have to adopt that order of proceeding "or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. In fact, the

Court observed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

Given the relative weakness of Hoilett's argument concerning prejudice, I will proceed directly to the prejudice prong of the *Strickland* analysis. The sole question concerning the performance of Hoilett's appellate counsel before the court is his decision not to appeal the lower court's decision denying Hoilett access to Wright's medical records. To demonstrate prejudice in the instant case, Hoilett must show that, but for his counsel's unreasonable failure to raise this issue, there is a reasonable probability that the SJC would have reversed his conviction and granted him a new trial. *Strickland,* 466 U.S. at 694.

After a careful review of the trial record, I find that Hoilett has not satisfied his burden of showing that he was prejudiced by his appellate counsel's performance. As an initial point, even if Hoilett's counsel had raised the issue of the records on appeal, the SJC likely would have concluded that the records had limited impeachment value because Cartwright's testimony was corroborated by other witnesses. Cartwright testified that when she saw Hoilett at around the time of the shooting, he looked "nervous" and was "pacing the floor back and forth" and repeating "f*****n spick" and "I hope he dies." Trans. Vol. 3, pp. 176-177. He was wearing a green mask, a light green hooded sweatshirt, blue jeans and boots and was bleeding from his hand. *Id.* at pp. 178-180. Bush corroborated significant parts of Cartwright's testimony. Like Cartwright, she testified that when she first saw Hoilett that day he was "shooken up," "jumpy," "nervous" and "shocked" *Id.* at pp. 62 -63, 75. She also explained that he was carrying a green mask and kept repeating that "I shouldn't did that" and "he should have given me the money." *Id.* at pp. 64-65. She described that he "was just walking, like pacing the floor." *Id.* at p. 75.

Ultimately, she conceded that she bandaged his bleeding hand. *Id.* at p. 77. Thus, for the SJC to have ordered a new trial, it would have had to find that Cartwright's psychiatric records impeached her testimony to an extent that a jury would have ignored the corroborating testimony presented by Bush. Moreover, there was additional corroborative evidence in that other witnesses at the scene of the crime testified consistently with Cartwright and Bush regarding the clothes the suspect wore. *See, e.g.,* Trans., Vol. 2, pp. 115-116 (Testimony of John Amado) (describing the robber at the store as a black man in his 20s wearing a green mask, blue jeans, a hooded sweater, and a dark jacket). Id. at p. 166 (Testimony of Sandor Clark)(explaining that the robber had a green mask and a hood). In addition, another witness testified that she saw a man with a mask and a shotgun in the sleeve of his jacket running out of the store and into Cartwright and Bush's apartment. Id., Vol. 3, pp. 26 - 27.

    It is important to note also that, even without the medical records, Hoilett's trial counsel was able to raise serious questions about Cartwright's memory and testimony during his cross-examination of her. He highlighted apparent inconsistencies between her testimony and her statements to the police and between her testimony and that of Bush. Counsel also pressed Cartwright on her memory and elicited testimony from her that she was seeing a social worker and had resided in a youth shelter called Short Stop.

    Finally, Mass. Gen. Laws Chap. 278, § 33E, by its terms, gives the SJC the power to undertake a full review of the record to determine if there has been a miscarriage of justice. Under that statute, the SJC examines "whether there was an error . . . (by all counsel and trial judge) and if there was, whether that error was likely to have influenced the jury's conclusion." *Commonwealth v. Britto*, 433 Mass. 596, 601 (2001) (citations omitted). The SJC does not take

its duty under 33E lightly, as evidenced by cases where the SJC has exercised its power under 33E to reach issues that appellate counsel failed to raise on appeal. *See, e.g., Commonwealth v. Gunther*, 427 Mass. 259, 260-261 (1998) (SJC, pursuant to its powers under Chapter 278, § 33E, considered an issue during direct review of defendant's case that neither trial or appellate counsel had raised).

More recently, the SJC has disposed of an argument such as the one Hoilett makes in this case by stating that "[t]he defendant's claim that he was deprived of the effective assistance of appellate counsel on his direct appeal ignores . . . the nature of plenary review." *Commonwealth v. Scott*, 437 Mass. 1008, 1008 (2002) (citing Chap. 278, § 33E). That the SJC failed to detect any error that amounted to a miscarriage of justice during direct review of Hoilett's conviction suggests that it would not have ordered a new trial if Hoilett's appellate counsel had presented this claim to that court. Consequently, Hoilett has failed to demonstrate that he was prejudiced by his appellate counsel's failure to assign as error the refusal of the Superior Court to permit review of Cartwright's medical records.

II.   Denial of Exculpatory Medical Records

Petitioner also moves for habeas relief on the additional ground that the trial court should have provided him access to Cartwright's medical records. He maintains that these records contain valuable exculpatory evidence and prevented him from impeaching her testimony.[11] The Commonwealth, by a way of a motion to dismiss, contends that this claim is procedurally

---

[11]Although Hoilett's petition never explicitly identifies which federal right is being infringed here, the court construes this claim as implicating Hoilett's Sixth Amendment right to confront witnesses against him.

defaulted because it is based on an adequate and independent state ground.

As noted earlier, federal habeas relief is not available to petitioners whose claims are subject to a procedural default. *Gunter*, 291 F.3d at 78 (citations omitted). As to this issue, Hoilett's motion for a new trial was denied on waiver grounds and a single justice denied his motion for leave to appeal. Hoilett could have raised the issue of the denial of Cartwright's records on direct appeal, but never did. This failure to raise this issue procedurally bars his claim. *See Lowe*, 405 Mass. at 1104-05.

Of course, Hoilett's failure to raise this issue on his direct appeal does not constitute an adequate and independent state ground if the SJC did not regularly and consistently enforce this procedural bar. *Gunter*, 291 F.3d at 79 (*citing Johnson v. Mississippi*, 486 U.S. 578 (1988) and *Harris v. Reed*, 489 U.S. 255, 262- 63 (1989)). There is no question, however, that the SJC consistently enforces rule that a claim not raised is waived. *Id.* (*citing*, *e.g.*, *Commonwealth v. Fernandes*, 430 Mass. 517 n.13 (1999). Consequently, this rule is firmly established.[12]

In addition, it also clear here that the last decision by the state court, in this case the miscarriage of justice review, did not rest on federal law. It is well-settled that "[i]f the last state court to review a petitioner's case reaches the merits of a federal claim presented to it, any bar to federal court review is lifted." *Id.* at 80 (*citing Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) and *Doucette v. Vose*, 842 F.2d 538, 539-540 (1st Cir.1988)). The last state court decision in this case is a terse, unexplained order by the single justice stating: "it is ORDERED that the leave to appeal is DENIED." When confronted with unexplained orders, the First Circuit has directed

---

[12]The SJC's review of a sentence under section 33E does not does not temper the state's contemporaneous objection rule. *Gunter*, 291 F.3d at 79-80 (citing cases).

district courts to "look[] through to the last reasoned decision" by the state court. *Id.* This decision, by the motion judge, states "defendant has waived all of these claims by his previous appeal." *See* Superior Court Criminal Docket, Ind. No. SUCR 1994-10359 at entry 50, October 24, 2000. The decision by the motion judge thus clearly rested on a state procedural default.

Even after concluding that a habeas petitioner's claim is foreclosed by a procedural default, the court still has to determine "whether petitioner has shown that there was cause for the default and actual prejudice, or that there was a fundamental miscarriage of justice. *Id.* (*citing Coleman*, 501 U.S. at 750). To demonstrate "cause" for a procedural default, petitioner must show "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* He can also demonstrate cause by showing that he received ineffective assistance of counsel in violation of the Sixth Amendment. *Id.* With respect to a showing of actual prejudice in connection with a procedural default, Hoilett has to satisfy the same strict standard as that required for a showing of prejudice in an ineffective assistance of counsel claim. *Prou v. United States*, 199 F.3d 37, 49 (1st Cir. 1999) (noting that these two standards "are one and the same"). Hoilett cannot show that he has suffered prejudice as a result of his procedural default for the reasons stated above with respect to the claim of ineffective assistance of counsel.

Finally, Hoilett has also fallen short of demonstrating that there is a fundamental miscarriage of justice. To show a fundamental miscarriage of justice, Hoilett "must establish his actual innocence." *Simpson v. Matesanz*, 175 F.3d 200, 210 (1st Cir.1999). That is, "petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Gunter*, 291 F.3d at 83 (*quoting Schlup v. Delo*, 513 U.S.

298, 327 (1995)). There is no realistic argument here that Hoilett can show that he is actually innocent of the crimes of which he has been convicted. As indicated above, there is overwhelming evidence tying him to the crime.[13]

## Conclusion

For the foregoing reasons, Michael Hoilett's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied and the petition is dismissed. The clerk shall enter judgment for the respondent. In addition, the court will not issue a certificate of appealability because Hoilett has failed to make a substantial showing of a denial of a constitutional right.

SO ORDERED.

Date:   March 31, 2005

                                                          /s/ Reginald C. Lindsay

                                                          United States District Judge

---

[13] This claim also fails for the separate and independent reason that it has not been exhausted. In his supplemental memorandum and record appendix in support of amended motion for leave to appeal from denial of motion for new trial, Hoilett cited two grounds for his motion: (a) the motion judge improperly ruled that his claims were waived; and (b) he received ineffective assistance of counsel. He did not argue that the trial judge improperly denied him access to Wright's records. As a result, he never exhausted this claim. *See* 28 U.S.C. § 2254(b)(1)(A) (stating that a habeas petition "shall not be granted *unless* it appears that the applicant has exhausted the remedies available in the courts of the State") (emphasis added).